IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID CHISOLM, individually and on Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No.: 4:07-CV-00475 |
| GRAVITAS RESTAURANT LTD, GRAVITAS MANAGEMENT SERVICES LLC  and FELIX FLORES | § § § § | |
| *Defendants.* | § § | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Gravitas Restaurant Ltd., Gravitas Management Services, LLC and Felix Flores, file this Motion for Summary Judgment and would show the following:

1.    The Court should grant this Motion for Summary Judgment because the tip pool in place at Gravitas Restaurant complied with the Fair Labor Standards Act ("FLSA"), with all employees being paid in excess of the minimum wage.

2.    In this case, plaintiffs allege two FLSA violations.  The first is that the tip pool violated the FLSA because it was shared with an employee, Felix Flores, who Plaintiffs claim was not eligible to participate in the tip pool.  This claim fails because the undisputed evidence establishes that a sommelier, the position for which Mr. Flores received tips, is a position that customarily receives tips.  Mr. Flores was not an "employer" under the statute and the FLSA permits a tipped employee to participate in a tip pool, even if he has some management duties. As a consequence, Defendants are entitled to judgment as a matter of law on this claim.

3.      The second violation alleged by plaintiffs is that the glass fund deduction of $1.00 per shift violates the FLSA because it resulted in the "house" participating in the tip pool.  First Amended Original Collective Action Complaint at paragraph 10.  Defendants are entitled to summary judgment on this claim because (1) the $1 was not from the tip pool and (2) the FLSA permits this deduction and at no time did any of the wait staff's compensation come close to falling below the minimum wage.

4.      It is also important to note what the plaintiffs have not alleged.  There is no allegation claiming lack of notice about either the tip credit or the tip pool.  There is no allegation by any plaintiff that his or her wages were below the minimum wage for any given work week.  Instead, the plaintiffs make a sweeping claim that Defendants cannot claim a tip credit under the FLSA and owe them the difference between the hourly wage paid by Gravitas and the federal minimum wage without any credit for the tips they received.

## SUMMARY JUDGMENT STANDARD

5.      Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A fact is material if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Under the rules, the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once this burden is met, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## FACTS RELIED UPON

6.      The facts in this section are either undisputed or plaintiffs cannot bring forward any competent evidence to rebut them.

7.      The wait staff at Gravitas is well compensated and always received the minimum wage set by the FLSA.  *See Exhibit A, Declaration of Scott Tycer, at ¶ 4*.  In fact, the wait staff received well in excess of the minimum wage.  For example from December 2005 to December 2006, David Chisolm, the named plaintiff, received a low $15.50 per hour in a two-week period, to as high $40.06 per hour during the Christmas pay perid, all as reflected in his payroll records attached as Ex. B.

8.      From its opening on July 16, 2005 to December 1, 2005, the tip pool at Gravitas had the following elements: the waitstaff tipped out 4% of their sales, which was split between other employees who customarily received tips.  In addition, a 3% charge was imposed against credit card tips because of the fee charged to the restaurant by the credit card companies.  *See Exhibit A at ¶ 10*.  There are no allegations in the Complaint that call into question in any way the tip pool as it existed until December 1, 2005.

9.      On December 1, 2005, the tip pool was changed to include provisions addressing compensation specifically for the restaurant's sommelier.  As before, the wait staff tipped out 4% of their *food* sales, but also tipped out either 3% or 5% of their wine sales depending on whether the sommelier was on duty during the shift.  At that time, management also implemented a $1 glass fund deduction for all waiters.   *See Exhibit A at ¶ 11*.

10.     Gravitas uses premium Reidel stemware.  On an average basis, the glasses cost $4.92 per stem.  *See Exhibit A at ¶ 13*.  As Mr. Tycer explains in his declaration, furnishing the premium stemware to the employee benefits the employee.  Premium stemware is roundly perceived to

enhance the wine drinking experience.  Gravitas customers both expect and require good glasses when they order high quality, expensive wines.  *Id.*

11.     Using premium stemware not only serves to enhance the customer's enjoyment of the wine, it also helps make the sale in the first instance. Use of the premium stemware benefits the restaurant in higher wine sales.  It also benefits the wait staff in higher tips. *See Exhibit A at ¶ 12.*

12.     One of the attributes of the Gravitas stemware is it is expensive.  On average, the stemware used at Gravitas cost $4.92 per stem.  *See Exhibit A at ¶ 13.* Another attribute is that it is fragile, leading to frequent breakage during service.  *See Exhibit A at ¶ 12.*  Over the time Gravitas has charged a breakage fee, it has collected $1,583 from all of its wait staff, combined. *See Exhibit A at ¶ 13.*  During that same period, replacing stemware has cost $11,566.78.  *Id.*

13.     At all relevant times, Felix Flores was employed as a sommelier and as an assistant manager.  *See Exhibit A at ¶ 5.*  Mr. Flores's responsibilities as an assistant manager were limited.  Importantly, at no time has Mr. Flores ever had the authority to:

- hire or fire employees;

- set the hours of operation for the restaurant;

- schedule the waitstaff;

- set hourly wages for any employee;

- set any policies with respect to the tip pool at the restaurant;

- take any action or responsibility for the payroll for the restaurant;

- sign checks for the restaurant;

- set vacations;

- determine goals for the restaurant;

- prepare or file income tax documents; or

- select insurance;

*Id.* at ¶ 5.  The above-listed duties were performed by Mr. Tycer or Mr. Gould, neither of whom

participated in the tip pool.  *Id.*

### THE FAIR LABOR STANDARDS ACT

14.     The FLSA requires employers in the United States to pay employees a minimum wage.

29 U.S.C. § 206 (a)(1).   Employers are permitted to pay employees less than the statutorily-

mandated minimum wage when those employees receive tips.  *Id.* at § 203(m).   Under the

section 203(m) "tip credit," an employer may use the employee's tip income to supplement its

minimum wage obligation to the employee.  Section 203(m) provides in part:

> (m)     "Wage" paid to any employee includes the reasonable cost, as determined by the
> Administrator, to the employer of furnishing such employee with board, lodging, or other
> facilities, if such board, lodging or other facilities are customarily furnished by such
> employer to his employees. . . In determining the wage an employer is required to pay a
> tipped employee, the amount paid such employee by the employee's employer shall be an
> amount equal to—
>
>> (1) the cash wage paid such employee which for purposes of such determination
>> shall be not less than the cash wage required to be paid such an employee on
>> August 20, 1996; and
>>
>> (2) an additional amount on account of the tips received by such employee which
>> amount is equal to the difference between the wage specified in paragraph (1) and
>> the wage in effect under section 206 (a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually
> received by an employee. The preceding 2 sentences shall not apply with respect to any
> tipped employee unless such employee has been informed by the employer of the
> provisions of this subsection, and all tips received by such employee have been retained
> by the employee, except that this subsection shall not be construed to prohibit the pooling
> of tips among employees who customarily and regularly receive tips.

### A.     Felix Flores properly participated in the tip pool.

15.     Plaintiffs allege that the tip pool was invalid because Felix Flores participated in the tip

        pool.  Defendants are entitled to summary judgment on this claim because Mr. Flores, a

sommelier, is a customarily-tipped employee, the FLSA contemplates dual function employees who may participate in a tip pool, and Mr. Flores was not an "employer."

> 1.    A sommelier is a customarily-tipped employee.

16.    Summary judgment is proper on the claims alleging that the Gravitas tip pool violated the FLSA because Felix Flores shared in the tip pool.    The trade of sommelier is one which customarily receives tips, both in the restaurant industry in general and in Houston in particular. *See Exhibit A at ¶ 5.*    Because a sommelier is a customarily tipped employee, Flores was entitled to participate in the tip pool. Moreover, during his employment at Gravitas, Flores received more than $30 per month in tips.  *See* 29 U.S.C. § 203(t) (defining "tipped employee" as one who receives $30 per month or more in tips).

17.    In *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294 (6th Cir. 1998), Outback Steakhouse wait staff sued claiming that the restaurant violated the FLSA by requiring that the wait staff pool their tips with the hosts and that the hosts did not fall within a category of employees who "customarily and regularly receive tips."  *Id*. at 297.  The court held that to satisfy the requirements of the FLSA, an employee must both receive more than $30 per month in tips and be engaged in an occupation that regularly receives tips. *Id*. at 301.

18.    The hosts satisfied both elements.  First, under the tip pool arrangement, the hosts regularly received more than $30 per month in tips.  Secondly, the court concluded that the hosts were engaged in an occupation that regularly received tips, even though the tips were not specifically designated for them.  *Id*. This was true because the hosts "sufficiently interacted with the customers in an industry (restaurant) where undesignated tips are common."  *Id*.  The court focused on the customer service functions performed by the hosts.  They greeted customers, supplied them with menus, sat them, and "enhance[d] the wait."  *Id*.  The functions undertaken

by the hosts were distinguished from other employees, who could not participate in a tip pool, on the ground that the hosts had more than de minimis interaction with the customers.  *Id.*

19.     The facts of this case also support Mr. Flores's status as a tipped employee under the FLSA.  At Gravitas, the sommelier has primary responsibility for constructing and overseeing the restaurant's wine list.  *See Exhibit A at ¶ 8.*  When on duty, the sommelier directly interacts with the customers on a continuing and ongoing basis.  This interaction includes greeting the customers at their table, discussing with the customers their food choices, and making recommendations concerning the wine to accompany the meal.  *Id. at 7.*  The sommelier may also present, open, and serve the wine chosen by the customer.  *Id.*  The interaction between sommelier and customer continues throughout the meal, with the sommelier often returning to the table to check on the customer's satisfaction with the wine or to make follow up recommendations.  *Id.*

20.     The chief factual difference between this case and *Kilgore* is that Flores's contact with the customers was far more extensive and sustained than the hosts in *Kilgore*.  The facts of this case establish that the sommelier at Gravitas (and at other restaurants) is an employee who customarily and regularly receives tips and is eligible to participate in a tip pool.  As shown in the next section, the fact that Flores had some limited management responsibilities did not preclude him from participating in the tip pool.

> 2.     The FLSA contemplates dual function employees who can participate in a tip pool.

21.     In addition to his responsibilities as a sommelier, Flores had some management responsibilities.  The fact that he had some management responsibilities does not preclude his valid participation in the Gravitas tip pool.  In fact, the FLSA contemplates having employees with dual functions who may still participate in a tip pool.

22.     The Field Operations Handbook addresses the situation when an employee performs different jobs.  It states that an employee's status as one "who customarily and regularly receives tips" depends on the fact situation and will be determined on the basis of the employee's activities over the work week.  DEPARTMENT OF LABOR, FIELD OPERATIONS HANDBOOK ch. 30d00(c)(2).

23.     The Court in *Dole v. Continental Cuisine, Inc.*, 751 F. Supp. 799 (E.D. Ark. 1990), rejected the same arguments that plaintiffs make in this case.  In *Continental Cuisine,* suit was broght over a maitre d' with management responsibilities who also participated in a tip pool.  In that case, the Labor Department sought to charge McGee, the maitre d' of the restaurant, with alleged tip pool violations.  The government argued that McGee was an employer and that the tip pool was therefore invalid.  *Id*. at 802.

24.     In addition to job functions typically performed by a maitre d', McGee also performed managerial functions which included interviewing potential employees, recommending who should be hired and fired, and scheduling the shifts for the waitstaff.  *Id*. at 800.  The Labor Department contended that these responsibilities made McGee an employer under the FLSA.  *Id*. at 802.  The Court rejected the argument:

> The Court disagrees with the position taken by the Secretary at trial that any person who has any supervisory duties over other employees, no matter how minimal, becomes an "employer" within the meaning of the Fair Labor Standards Act.

*Id*.  On the contrary, the Court held that because McGee did not hire or fire employees, control the methods of operation at the restaurant, control the payroll, or set wages, he could not be an "employer" under the FLSA.  *Id*. at 803.  Of the four factors cited by the court, three (control of methods of operation, control of payroll, and the setting of wages) directly concerned the alleged FLSA violation.  Arguably, all of the factors were directed at the ability to control the FLSA

violation because the person making a hiring decision presumably controls or participates in the compensation decision.  At a minimum, the person making a hiring decision is responsible for bringing an employee into the situation that allegedly violates the FLSA.

25.     Flores is not an "employer" within the meaning of the FLSA.  As shown by Mr. Tycer's affidavit, he had no ownership interest in the restaurant, nor did he exercise control over the business activities to such an extent that he would be classified as an employer.  *See Exhibit A* ¶ 5.  As the Fifth Circuit stated in *Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir. 1984), the most significant factor in determining "employer status" is whether the individual could authorize compliance with the FLSA. *Id*. at 972 n.7.  The undisputed evidence shows that Flores did not and could not.

26.     Moreover, the "economic reality" of the working relationship also conclusively demonstrates that Mr. Flores is not an employer under the FLSA.  Whether someone is an employer under the act depends on the "economic reality" of the working relationship. *Goldberg v. Whitaker House Co-op, Inc.*, 81 S. Ct. 1473 (1961).  The ultimate question for a Court in an "economic reality" inquiry is whether the individual had control over the alleged FLSA violation.  *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir.1987); *Davis v. B&S, Inc.*, 38 F. Supp.2d 707, 715 (N.D. Ind. 1998).  Courts often look to four factors in the economic reality test: (1) the power to hire or fire employees; (2) supervision of employee work schedules or conditions of employment; (3) power to determine rate and method of payment; and maintenance of employment records.  *See Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983).

27.     The Fifth Circuit uses similar factors to the *Bonnette* case in analyzing whether an individual is an employer under the FLSA.  The Fifth Circuit has held that the definition of

employer includes "an individual who, though lacking a possessory interest in the 'employer' corporation, effective dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993).

28.     Like the maitre d' in *Continental Cuisine,* Flores had some management responsibilities; however, those limited duties do not make him an employer for FLSA purposes.  As an employee in a position that customarily and regularly received tips, Flores properly participated in the Gravitas tip pool.  Accordingly, Defendants are entitled to summary judgment on the claims arising out of Flores's participation in the tip pool.

> **B.    Gravitas is entitled to the tip credit because the tip pool was valid and the wait staff retained all of their tips. The FLSA permits deductions for "meals, lodging, or other facilities."**

29.     Plaintiffs' claims regarding Felix Flores fail as a matter of law for the reasons stated above and there are no other allegations of employees who improperly participated in the tip pool, leaving only the allegation concerning the glass fund.  A tip credit is available to an employer provided that (1) the employees were notified that the employer intended to utilize a tip credit (about which there are no allegations in this case) and (2) the employees retained all of their tips, provided that nothing in the statute prohibits a valid tip pool. *See* 29 U.S.C. § 203(m). The plaintiffs fundamentally misconstrue the glass fund in an effort to make it appear that the wait staff did not retain all of their tips.  The Court should reject this argument and grant summary judgment to Defendants because the wait staff in fact retained all of their tips and the glass fund was a permissible deduction for meals, lodging or other facilities under 203(m).

30.     Wages may be paid other than in cash under section 203(m) of the FLSA.  *See* 29 C.F.R. § 531.27.  Under section 203(m), the wage paid to an employee includes "the reasonable cost, as

determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging or other facilities are customarily furnished by such employer to his employees. . ." 29 U.S.C. § 203(m).

31.     Section 203(m) also provides that an employer may take a tip credit for tipped employees. As noted above, the statute defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).   Each of the plaintiffs, all of whom were wait staff at the restaurant, was a "tipped employee."

32.     The tip credit and the credit for furnishing board, lodging, or other facilities are not mutually exclusive.  In fact,  the CODE OF FEDERAL REGULATIONS provides:

> In determining compliance with the wage payment requirements of the Act, under the provisions of section 3(m) the amount paid to a tipped employee by an employer is deemed to be increased on account of tips by an amount which cannot exceed 50 percent of the minimum wage applicable to such employee in the workweek for which the wage payment is made. ***This credit is in addition to any credit for board, lodging, or other facilities which may be allowable under section 3(m).***

29 C.F.R. § 531.59 (emphasis added).

33.     Thus, an employer is entitled to receive credit for board, lodging, or other facilities and to utilize a tip credit.   Importantly, the reasonable cost of furnishing board, lodging, or other facilities may be taken by the employer as a credit or as a deduction from the stipulated wage. 29 C.F.R. § 531.29 provides in part:

> Section 3(m) applies to both of the following situations: (a) Where board, lodging, or other facilities are furnished in addition to a stipulated wage; and *(b) where charges for board, lodging, or other facilities are deducted from a stipulated wage*.

(emphasis added).

34.     The term "other facilities" is not defined by the FLSA.  The Department of Labor's regulations state that where the facilities are *primarily* for the benefit or convenience of the employer, the cost of furnishing the facilities will not be recognized as reasonable.  *See* 29 C.F.R. § 531.32(c).  Interpreting the statute to require the facility to be *primarily* for the benefit of the employee does not apply in this case for two reasons.

35.     First, the DOL's interpretation does not address the fact situation present before this Court in which the employer furnishes facilities that are a direct benefit to the employee, in this case in the form of increased sales and tips. 29 C.F.R. § 531.32(c) lists some specific items, the likes of which the DOL contends are not facilities for which the reasonable cost may be considered part of the employee's wage.

36.     The facts in this case are distinguishable, both as to the facility provided and as to the nature of the employee's job.  Section 531.32(c) lists items like safety caps, explosives, miner's lamps, and electricity for the employer's premises as facilities for which no credit may be taken. These items share a common characteristic: they simply allow the employee to do his or her job. They do not provide any ability or opportunity for the employee to increase the amount of money he or she would otherwise earn.  Here, the glass fund represents a fraction of the increased cost of furnishing the premium stemware, the provision of which directly benefits the employee.

37.     The second reason why the DOL's interpretation should be disregarded in this case is that the interpretation is contrary to the wording of the statute.  The statute's plain language states that "wage" includes the reasonable cost of board, lodging, or other facilities customarily furnished.  Adding a requirement that the facility furnished be "primarily" for the benefit of the employee adds a requirement that, in effect, contradicts the statute by placing an additional burden on employers that Congress did not legislate.  "[N]o deference is due to agency

*Chisolm v. Gravitas Restaurant, Ltd.*
Defendants' Motion for Summary Judgment
Page 12 of 14

interpretations at odds with the plain language of the statute itself. Even contemporaneous and longstanding agency interpretations must fall to the extent they conflict with statutory language." *Public Employees Retirement System of Ohio v. Betts*, 109 S. Ct. 2854, 2863 (1989).[1]

38.     The premium stemware provided by Gravitas is a "facility" provided to the employee and for which Gravitas is entitled to make a deduction from its employee's wages.   The Court should grant summary judgment for Defendants.

> **C.     Gravitas is entitled to its tip credit even if the stemware is a non-3(m) deduction.**

39.      Even if the Court were to conclude that the premium stemware does not qualify as a facility under 203(m), Gravitas is entitled to its tip credit because it otherwise met the requirements of that section.   No Plaintiff has alleged that his or her hourly pay plus tips fell below the applicable minimum wage and the evidence shows each plaintiff received in excess of the minimum wage even with the allegedly improper glass fund deduction.

40.     The glass fund did not come from the tip pool.  Instead, it was a separate deduction.  Ex. A at ¶ 9. The Field Operations Handbook allows non-3(m) deductions when the wage received by the employee does not fall below the minimum wage.  FIELD OPERATIONS HANDBOOK 30c16. Accordingly, the Court should grant summary judgment.

41.     Even if the deduction could somehow be construed as dropping the wages below the applicable minimum wage, 29 U.S.C. § 216(b) provides that the remedy is the amount of unpaid minimum wages, which in this case would be $1 glass fund per named plaintiff per shift worked and not the draconian windfall plaintiffs and their attorneys seek here.

---

[1]     In a similar vein, the Department of Labor interpreted 203(m) to require that in-kind benefits be "voluntary and uncoerced" on the part of the employee.  The Fifth Circuit (and other circuits) rejected this as being inconsistent with the statute's plain language.  *See Donovan v. Miller Properties,* 711 F.2d 49, 50 (5th Cir. 1983).

WHEREFORE, Defendants request that the Court grant this Motion, dismiss the claims asserted by Plaintiffs with prejudice, tax costs against Plaintiffs, and they request such other relief to which they are entitled.

ARTHUR S. FELDMAN & ASSOCIATES, P.C.

By:  /s/ Arthur S. Feldman
          ARTHUR S. FELDMAN
          State Bar No. 06886600
          1330 Post Oak Blvd., Suite 2820
          Houston, Texas  77056
          (713) 586-1616
          (713) 586-1617 (FAX)

ATTORNEYS FOR DEFENDANTS

OF COUNSEL:

Tracy A. Phillips
Texas Bar No. 00784762
Stanley, Phillips & Rose, LLP
1330 Post Oak Blvd., Ste 2820
Houston, Texas 77056
(713) 980-4381
(713) 980-1179 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that, in accordance with Federal Rules of Civil Procedure, a true and correct copy of the foregoing instrument was served upon all counsel of record by the Federal Electronic Filing system and by facsimile on the 19th day of October 2007.

 /s/ Arthur S. Feldman