IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID CHISOLM, individually and on Behalf of All Others Similarly Situated, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No.: 4:07-CV-00475 |
| GRAVITAS RESTAURANT LTD, GRAVITAS MANAGEMENT SERVICES LLC  and FELIX FLORES | § § § § § | |
| *Defendants.* | § § | |

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE TO GRAVITAS' MOTION FOR SUMMARY JUDGMENT

Defendants, Gravitas Restaurant Ltd. and Gravitas Management Services, LLC file this Reply to the Plaintiffs' Response to Gravitas' Motion for Summary Judgment, and would show the following:

1.   As pointed out in Gravitas' Response to plaintiffs' motion for summary judgment (Document 44), this case has been significantly narrowed on account of two developments. First, plaintiffs decided to abandon their claims against one defendant, Felix Flores. Second, plaintiffs failed to submit any controverting evidence to Gravitas' position that a sommelier is a traditionally tipped employee, and therefore a legal participant in a tip pooling arrangement. Accordingly, Gravitas is entitled to summary judgment on that factual and legal point.[1]

---

[1] On February 12, 2008 (the day before this filing), plaintiffs' counsel inquired whether Gravitas would oppose a motion to dismiss plaintiffs' claims challenging the participation of a sommelier in Gravitas' tip pool.  Although plaintiffs have not yet filed their motion, the court should be aware that Gravitas is

2.	The plaintiff class now rests its case on a single allegation: that the deduction of $1.00 per shift for glass breakage was improper under the FSLA. According to the plaintiffs, this deduction requires the court to give no credit for the tips earned by Gravitas waiters in calculating the hourly wages paid by their employer. Gravitas files this Reply to point out a clear misstatement of both the facts and the law by the plaintiffs in their Response.

3.	According to the plaintiffs' Response, "it is unclear whether Gravitas claims the breakage fee was taken from Plaintiffs' direct wages or from their tips." Plaintiffs' Response, Document 42, at 5. That assertion is false. Mr. Tycer's declaration, which is the only competent summary judgment evidence before this court, states: "This amount [the $1.00 deduction for glass breakage] did not come from the amounts deducted for the tip pool, but rather was in addition to the amounts distributed among employees. In other words, the glass charge would apply even if a wait person received no tips during their shift." Tycer Declaration at ¶ 11, Exhibit 1 to Gravitas' Motion for Summary Judgment.

4.	In a footnote, the plaintiffs refer to an attachment to their motion, Exhibit A, asserting that the "'Server Tip Out Structure' states that the money out [sic] of the employees' tips." Plaintiffs' Response, Document 42 at 2 n.3. First, Exhibit A is unverified hearsay, and therefore is not competent summary judgment evidence. See Rule 56(e)(1) (providing that sworn or certified copies must be attached to an affidavit to be considered evidence in a summary judgment proceeding). Accordingly, Gravitas hereby moves to strike Exhibit A because it is inadmissible.

---

strongly opposed. At this stage of the case, Gravitas is entitled to summary judgment on this issue as a matter of law because plaintiffs failed to bring forward any controverting evidence. Gravitas respectfully requests that the court enter judgment on this point in favor of Gravitas, irrespective of the outcome of the remaining disputed issue in this case.

5.      However, even if the court were to consider Exhibit A, it does not contradict Mr. Tycer's declaration.  On the contrary, Exhibit A confirms it.  The bottom of Exhibit A sets forth the formula:  "(A) + (B) + (C) + (D) - $2.00 = $_____ ON YOUR CHECK!"  The variables are the percentages contributed to the tip pool for differing types of sales, with the "ON YOUR CHECK!" total representing the amount of the deduction appearing on the waiter's check.  Consistent with Mr. Tycer's testimony, if a waiter made no sales and earned no tips, the variables would all equal zero, but $2.00 would still be deducted from the pay check, $1.00 for meals and $1.00 for glass.  Therefore, Exhibit A confirms that the *only* payroll deduction for glass is paid not from the tips earned by the waiters, but from their base cash wages.

6.      The plaintiffs follow this factual inaccuracy with a second contention that, even if the deduction is from the cash hourly wage, "it makes no difference" and that the "result is the same."  Plaintiffs' Response, Document 42, at 2 n.3, 5.  As a matter of law, that position is also incorrect.  On the contrary, the plaintiffs' argument contradicts the express language of the statue and it is *not* supported by the two cases cited in the Response, or the Department of Labor opinion letter attached to plaintiffs' Response as Exhibit B.

7.      The definition of "wage" and the manner the wage is calculated under the FSLA is set forth at 29 U.S.C. § 203(m), which, as effective for this case, provided in relevant part:

> (m)   "Wage" paid to any employee includes the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging or other facilities are customarily furnished by such employer to his employees. . . In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> > (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and

> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206 (a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m) (2006). The reference to "section 206(a)(1)" is the prevailing minimum wage, which for this case was $5.15 an hour.

8. The plaintiffs' claim is that "it does not matter" whether the supposedly improper glass deduction was subtracted by the employer from paragraph (1) or paragraph (2) of section 203(m). In other words, plaintiffs contend that an employer loses its ability to claim the tip credit for a violation of either paragraph (1) or paragraph (2). However, section 203(m) simply does not say that. Rather, the tip credit is lost *only* if the employee does *not* retain "all tips received by such employee" or if there is an invalid tip pool. Here, the plaintiffs have abandoned their claim that the tip pool was improper. And, now, the undisputed summary judgment evidence is that the $1.00 glass deduction comes from paragraph (1) cash wages, not the tips earned by the employee in paragraph (2). The undisputed summary judgment evidence before this court is that Gravitas waiters retained all their tips. Therefore, as a matter of law, Gravitas does not lose the tip credit it is entitled to take when calculating the wage it has paid its employees.

9. Indeed, although Gravitas could find no regulation or opinion letter promulgated by the Department of Labor which is exactly on point, at least one regulation suggests that no damages should obtain under any circumstances in this case. Section 531.36 of Title 29 of the Code of

Federal Regulations deals with calculating wages where additions or deductions are involved. Following the statute's language, the regulation recognizes that an employer may deduct only the "reasonable cost" of a qualifying facility such as board or lodging. However, even where an employer improperly profits from a payroll deduction for a facility (that is, charges more than the cost of deduction), the deduction is illegal "only to the extent that the profit reduces the wage (which includes the 'reasonable costs' of the facilities) below the required minimum." In other words, so long as the employee earned the minimum wage, there is no wage claim available for back pay.

10. Extending the principal articulated by the Department of Labor in Section 531.36 to the case at bar yields a similar result: a technical violation in a circumstance where the wage never fell below the minimum wage because the tip credit made up for any shortfall. This conclusion follows from the statute's method of calculating "wage," which is also determined by Section 203(m):

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206 (a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee.

If the $1.00 glass deduction in this case is improper, then, conceivably, Gravitas technically ran afoul of paragraph (1) because the "cash wage" was a small amount less than required.

Assuming an eight hour shift, the $1.00 deduction would violate paragraph (1) by 12.5 cents each hour. However, applying paragraph (2), the tip credit would be increased by 12.5 cents, because the tip credit equals the minimum wage less the "wage specified in paragraph (1)." Under the statute, the "wage specified in paragraph (1)" is the "cash wage paid such employee." As confirmed by Mr. Tycer's declaration, the total tips earned by Gravitas waiters were far in excess of minimum wage. For example, the named plaintiff in this case, David Chisolm, earned $15.50 an hour on for his *lowest* two week pay period, and as much as $40.00 an hour for his best. Thus, applying the formula in 203(m), the wage earned for Gravitas employees is, as a matter of law, exactly $5.15 an hour, because the shortfall in paragraph (1) is recouped under paragraph two with a larger tip pool allotment. Extending the 8 hour shift example, the paragraph (1) cash wage would be $2.015 an hour. The paragraph (2) tip credit would be the minimum wage of $5.15 less the cash wage in paragraph (1), which equals $3.135 an hour. Applying the $3.135 figure is permissible because "the additional amount on account of tips may not exceed the value of the tips actually received by an employee," a condition that is confirmed as true by Mr. Tycer's uncontroverted declaration. Combining paragraphs (1) and (2), therefore, yields a legal wage of exactly $5.15 an hour. Like the in the example from Section 531.36 of the Code of Federal Regulations, the technical violation results in no substantive damages because Gravitas still paid the minimum wage as calculated by the formula set forth in section 203(m).

11.     This conclusion is also supported by the Department of Labor Opinion Letter of June 9, 2006, relied on inappropriately by the plaintiffs. In that letter, the Department answers "Question 2" by stating only that "no portion of an employee's *tips* may be kicked back to the employer." (emphasis added) The Department makes no such conclusion with respect to paragraph (1) *cash wages*, and in fact says the opposite. In "Answer 2" of the Opinion Letter,

the Department sets forth an example where the employer pays $1.00 *more* than the minimum cash wage under paragraph (1) of Section 203(m), that is, $3.13 instead of $2.13. In that circumstance, the *full* tip credit is applied, according to the Department's interpretation, and the employer is permitted to make payroll deductions even for "facilities" which are not approved as benefitting the employee in the Department's view (uniform laundry changes under the example in Question 2). Necessarily, this means that an employer does not forfeit its ability to claim a paragraph (2) tip credit where there are deductions made to paragraph (1) cash wages, even if they are not facilities which could be claimed as a wage credit. In this case, there is no factual dispute concerning the source of $1.00 glass deduction: It is uncontroverted that it came from paragraph (1) cash wages. Therefore, Gravitas cannot lose its right to claim the tip credit on the undisputed facts of this case.

12.   The plaintiffs argue, however, that the amount of cash wage received for purposes of paragraph (1) was always "something less than $2.13 per hour in direct wages." Plaintiffs' Response, Document 42, at 6. However, even if the court agreed with that interpretation, the wage under section 203(m) would still be only pennies less than required on an hourly basis, or precisely $1.00 per shift per employee. Plugging that number into the penalties section of the FSLA, actual damages in this case could not exceed $2.00 per shift per employee: $1.00 for the improper charge and "an additional equal amount" as liquidated damages. See 29 U.S.C. § 216(b). In the aggregate this calculation will yield a damage amount on an order of magnitude some one hundred times *less* than the windfall plaintiffs are currently seeking. Clearly, where the deduction comes from is important.

13.   The two cases cited by plaintiffs which supposedly prohibit an employer from claiming a tip credit where there is only a violation of section 203(m) paragraph (1), and not paragraph (2),

simply do not hold what plaintiffs' claim they hold. Neither case conditions the right to claim the tip credit on the receipt by the employee of "a direct wage of at least $2.13 per hour, free and clear of any kickbacks," which is what plaintiffs' Response blatantly asserts. See Response at 3. The first case cited to support this contention, *Brennan v. Veterans Cleaning Service, Inc.*, actually had nothing whatsoever to do with the interplay between paragraph (1) and paragraph (2). In fact, *Veterans Cleaning Service, Inc.* did not discuss the applicability of the tip credit at all. Rather, that case examined the propriety of deductions imposed by an employer for repayment of damages caused by an allegedly intoxicated employee who wrecked a truck. Although the court held that some of the deductions may have been, in theory, appropriate, the employer's failure to keep accurate records made the deductions improper because the employer could not carry its burden of proof. *See Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362, 1369-70 (5th Cir. 1973).

14. Likewise, *Martin v. Tango's Restaurant, Inc.* offers no support to the plaintiffs' position. In that case, the appellate court overturned a determination adverse to the Department of Labor concerning whether notice had been given to the employees that they would be required to participate in a tip pool. The appellate court found that there was no evidence supporting the district court's determination that notice had been provided, requiring a reversal. *See Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1322-23 (1st Cir. 1992). The case at bar, of course, has nothing to do with improper notice.

15. If anything, *Tango's Restaurant* could be read to support Gravitas' position, at least implicitly. In *Tango's Restaurant,* prior to reversal, the district court had allowed a paragraph (2) tip credit where the district court had made other findings adverse to the employer concerning underpayment of the base wage under paragraph (1). Apparently, the employees of *Tango's*

*Chisolm v. Gravitas Restaurant, Ltd.*
Defendants' Reply to Plaintiffs' Response
To Gravitas' Motion for Summary Judgment
Page 8 of 10

*Restaurant* worked about 53 hours a week but were only paid for 40 hours a week in base pay. Under those facts, the Department of Labor does not appear to have made the argument that the tip credit should be disallowed because of an underpayment of paragraph (1) base wages, as is being urged by the plaintiffs here. Rather, on appeal, the Department of Labor only raised the notice issue. If a paragraph (1) violation automatically precludes an employer from claiming a paragraph (2) tip credit, as is being urged by the plaintiffs in this case, one certainly would have expected to see that argument in *Tango's Restaurant*.

16.     Clearly, whether the $1.00 deduction comes from the tip pool or cash wages is a critical distinction. The undisputed evidence in this case is that the deduction was from cash wages under paragraph (1), and that the Gravitas waiters otherwise retained all of their tips under paragraph (2), expect for deductions from a now-unchallenged and therefore valid tip pool arrangement. Applying 203(m) under these facts (and assuming that the court rejects Gravitas' position that $1.00 deduction was for a valid facility) yields either no damages or, at worst, damages of $2.00 per shift per employee, a modest amount to say the least.

WHEREFORE, Defendants request that the Court grant Gravitas' Motion for Summary Judgment or alternatively, enter a judgment for $2.00 per shift per employee, and schedule an evidentiary hearing to liquidate that amount and determine reasonable attorneys' fees to be awarded, if any, under Section 216(b).

                                                ARTHUR S. FELDMAN & ASSOCIATES, P.C.

                                                By:  /s/ Arthur S. Feldman
                                                     ARTHUR S. FELDMAN
                                                     State Bar No. 06886600
                                                     1330 Post Oak Blvd., Suite 2820

Houston, Texas 77056
(713) 586-1616
(713) 586-1617 (FAX)

ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that, in accordance with Federal Rules of Civil Procedure, a true and correct copy of the foregoing instrument was served upon all counsel of record by the Federal Electronic Filing system and by facsimile on the 13th day of February, 2008.

/s/ Arthur S. Feldman